IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RITA A. CANN,

                    Plaintiff,

vs.                                    Case No. 12-4064-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

                    Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step
requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993). At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy. Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The
Commissioner meets this burden if the decision is supported by
substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

Plaintiff filed a claim for disability benefits on July 12,
2005 (R. at 18). On September 13, 2007, administrative law
judge (ALJ) Linda L. Sybrant issued her 1st decision, finding
that plaintiff was not disabled because she could perform other

work in the national economy (R. at 18-25).  Plaintiff sought

judicial review of the administrative decision, and on March 3,

2009, the U.S. District Court for the District of Kansas

reversed the decision of the Commissioner and remanded the case

for further hearing (R. at 859-885).

On March 4, 2010, ALJ Linda L. Sybrant issued her 2nd

decision (R. at 836-855).  Plaintiff alleges that she has been

disabled since February 28, 1994 (R. at 836).  Plaintiff is

insured for disability insurance benefits through March 31, 2002

(R. at 837).  At step one, the ALJ found that plaintiff has not

engaged in substantial gainful activity from her alleged onset

date through her date last insured (R. at 837).  At step two,

the ALJ found that plaintiff has the following severe

impairments:  degenerative disc disease of the lumbar spine;

mild COPD; and fibromyalgia (R. at 837).  At step three, the ALJ

determined that plaintiff's impairments do not meet or equal a

listed impairment (R. at 837).  After determining plaintiff's

RFC (R. at 853), the ALJ determined at step four that plaintiff

could perform past relevant work (R. at 853-854).  Therefore,

the ALJ concluded that plaintiff was not disabled (R. at 854).

On April 3, 2012, the Appeals Council declined to assume

jurisdiction, making the ALJ decision the final decision of the

Commissioner of Social Security (R. at 825).

**III.  Did the ALJ err by failing to find a severe impairment at step two?**

On July 28, 1997, Dr. Athey, a psychologist, prepared a neuropsychological test report on the plaintiff.  In his report, he noted that plaintiff had some impairments (R. at 188-189). Plaintiff alleges that the ALJ erred by failing to find a severe mental impairment at step two, and then failing to impose any limitations from the impairment.

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in

substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

In his decision, the ALJ did note some of the treatment records from Menninger, although not the report from Dr. Athey. The ALJ found insufficient evidence to assess any mental health condition as a severe impairment.  The ALJ relied on a state agency assessment which found that there was insufficient evidence to assess the severity of plaintiff's mental impairment (R. at 404-416, 848).

Plaintiff has failed to point to any medical evidence which states or indicates that this impairment would have more than a minimal effect on plaintiff's ability to perform basic work activities.  Furthermore, the ALJ can reasonably rely on the state agency assessment to find that the evidence was insufficient to support a finding that plaintiff had a severe mental impairment.  For these reasons, the court finds no clear error by the ALJ for failing to find at step two that plaintiff had a severe mental impairment.

Even assuming plaintiff met his burden of proving that plaintiff had a severe mental impairment, the issue before the court would be whether it is reversible error if the ALJ fails to list all the severe impairments at step two. In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments. The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal. However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

Plaintiff has failed to cite to any evidence that plaintiff's mental impairments resulted in any limitations in her ability to work. Although Dr. Athey noted that plaintiff had some mental impairments, he never indicated that such impairments would result in limitations in her ability to work. In light of plaintiff's failure to cite to any medical evidence that plaintiff had any limitations from her mental impairments that impacted her ability to work, the court finds no error by the ALJ in his analysis of plaintiff's mental impairments.

**IV. Did the ALJ err by failing to address evidence from plaintiff's husband and plaintiff's former employer?**

On June 5, 2007, plaintiff's husband testified at a hearing before the ALJ. He testified that she started suffering a lot of pain and could not stand on her feet or sit for long periods of time after 1994. He indicated that her concentration and pain are the major limiting factors for his wife (R. at 812-815). The file also contains a March 5, 2010 letter from a former employer, Peter La Colla, which states, in relevant part, as follows:

> I am writing to you to share my observations regarding Rita Cann's work abilities and how it evolved over time at our company. Rita was employed at McColla Enterprises, Ltd. For two distinct and separate time frames. The first was 1992 to early 1994 and the 2nd was 1999 thru 2000. In both instances she reported directly to me. The break in her employment, from 1994 to 1999 with our

company, afforded me a clear contrast in her abilities to perform her job.

Rita's first stint at our company was in the capacity of a warehouse manager…The job required tremendous organizational skills and attention to critical and short time schedules.  Physical effort in moving the boxes full of calendars was necessary.  Rita performed all these tasks competently and adeptly…With the demise of the calendar division, Rita's position with the company was dissolved.

Rita returned to work for McColla Enterprises, Ltd. in 1999 this time performing administrate duties for both Marci Daugherty and I.  Her ability to perform had declined notably since her last time she worked for our company.  She had constant pain from a variety of health issues.  I recall her once saying she was in so much pain that even her hair hurt.  She brought with her to work, multiple timers to track the myriad of medications she had to take throughout the day.  I saw her managing the medication with very elaborate pill boxes segregating the different drugs.  Her work suffered both in terms of not being able to attend work on a consistent basis and to her inability to track to the extent it was necessary.  Rita had to make written notes of everything, because she could not rely on her memory, even for ordinary items…Rita's employment was brief the 2nd time, due to the troubles she had in performing the job requirements, and was fraught with frustration; I'm sure on both our parts.

It was clear to me that the medical issues that she had to endure where a barrier for her to perform as she had in the years previous to the year end of 1993.

(R. at 965-966). The ALJ decision failed to mention either the testimony of plaintiff's husband, or the detailed statement from her former employer, Peter La Colla.

In Blea v. Barnhart, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments. The court held as follows:

> In actuality, the ALJ is not required to make specific written findings of credibility only if "the written decision reflects that the ALJ considered the testimony." Adams, 93 F.3d at 715. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision. Thus, it is not at all "clear that the ALJ considered [Mrs. Blea's] testimony in making his decision." Adams, 93 F.3d at 715. Additionally, Mrs. Blea's testimony regarding her husband's suicidal thoughts is not only uncontroverted; it serves to corroborate Dr. Padilla's psychiatric examination of Mr. Blea, where he stated that Mr. Blea has been dysthymic for years. [citation to record omitted] Thus, the ALJ's refusal to discuss why he rejected her

> testimony violates our court's precedent,
> and requires remand for the ALJ to
> incorporate Mrs. Blea's testimony into his
> decision. "Without the benefit of the ALJ's
> findings supported by the weighing of this
> relevant evidence, we cannot determine
> whether his conclusion[s] ... [are]
> supported by substantial evidence." Threet,
> 353 F.3d at 1190; see also Baker v. Bowen,
> 886 F.2d 289, 291 (10th Cir.1989) ("[W]here
> the record on appeal is unclear as to
> whether the ALJ applied the appropriate
> standard by considering all the evidence
> before him, the proper remedy is reversal
> and remand.").

Blea, 466 F.3d at 915.

According to Blea, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony. Defendant concedes, as was the case in Blea, that the ALJ did not mention either statement in her decision (Doc. 19 at 9). Dr. Cann's testimony noted that plaintiff could not stand on her feet or sit for long periods of time, and her ability to do housework or perform a job declined after 1994. More specifically, her former employer, Mr. La Colla stated in detail the marked decline in her work performance between 1992-1994 and 1999-2000. His statement is uncontroverted, and provides the only indication in the record from an employer or supervisor of her decline in work performance. These statements therefore serve to corroborate some of the limitations opined by her treating physician, Dr. Iliff. Specifically, the court would note that Dr. Iliff indicated that plaintiff could only sit for

20 minutes before changing position, and she could only stand for 15 minutes before changing position (R. at 419).  Dr. Cann had testified that plaintiff could not stand for sit or stand for long periods of time after 1994 (R. at 813).[2]

As was the case in Blea, the ALJ never mentioned or referred to the statements or testimony of these two individuals.  Mr. La Colla's statements regarding plaintiff's ability to perform her job during the two different time periods, both before and after her alleged onset of disability, are uncontroverted, and both statements provide some corroboration for the opinions of her treating physician, Dr. Iliff, regarding her limitations.  Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, the court cannot determine whether the ALJ's conclusions are supported by substantial evidence.  Therefore, this case shall be remanded in order for the ALJ to consider these statements, and determine what weight they should be accorded when evaluating plaintiff's credibility.  These statements should also be considered when determining the relative weight to give to the various medical opinions regarding plaintiff's limitations.

---

[2] In fact, Dr. Rubini testified in 2007 that plaintiff could sit, but would need to stand up and walk around for a few minutes whenever she felt that was necessary; he also indicated she could walk for 15 minutes at a time (R. at 807-808).  In the ALJ's first decision, the ALJ included in plaintiff's RFC findings that "she could only walk for 15 minutes at a time and required a sit/stand option (R. at 22).  Despite giving substantial weight to the opinions of Dr. Rubini in the 2nd decision (R. at 852), the ALJ inexplicably did not include this limitation in her 2nd decision.

**V. Did the ALJ err in his evaluation of the medical opinions?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

When this case is remanded, the ALJ will have to reevalute the weight to give the medical source opinions after considering the third-party statements set forth above.  However, the court will briefly address some of the other issues related to the treating source opinions.

The record contains a February 21, 2007 medical source opinion from Dr. Iliff, a treatment provider.  It includes a number of major limitations, including her inability to stand, walk and sit for 8 hours in an 8 hour workday (R. at 419-421). The ALJ found it not controlling and gave it no weight.  The ALJ indicated that it was written five years after plaintiff's date last insured.  The ALJ further noted that it is plaintiff's report of what she could or could not do, and as such is not even a medical opinion.  The ALJ indicated that plaintiff is not a specialist in fibromyalgia, and finally the ALJ stated that the assessment "is not consistent with the medical evidence, nor is it supported by Dr. Iliff's own records" (R. at 853).

Plaintiff argues that the fact that this statement was written in 2007, or five years after plaintiff's date last insured has no bearing on evaluating this opinion (Doc. 12 at 32).  However, the court, in its earlier decision, held that

this was a relevant factor to consider (R. at 883). Of course, on remand, the ALJ must keep in mind that Dr. Rubini's opinions were also from 2007 (R. at 783, 806), and Dr. Winkler's opinions were from 2010 (R. at 1237, 1240).

In his report, Dr. Iliff, when asked what medical findings support the limitations he set out, he responded: "None. This is by patient report. That's the nature of fibromyalgia" (R. at 420). Later, when asked what medical findings support his limitations, he responded: "patient reports" (R. at 420).

The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity. Wilson v. Astrue, 602 F.3d 1136, 1143 (10th Cir. 2010)(when the record contained diagnoses of chronic pain syndrome or fibromyalgia, the court stated that complaints of severe pain do not readily lend themselves to analysis by objective medical tests, and are notoriously difficult to diagnose and treat; further noting that no objective medical tests reveal the presence of fibromyalgia); Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia; Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F.

Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999).  Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition.  Priest, 302 F. Supp.2d at 1213.

Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms.  Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006).  The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia (R. at 425); Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Glenn, 102 F. Supp.2d at 1259.

As noted above, there are no objective tests to determine the severity of fibromyalgia.  To be diagnosed with fibromyalgia, a patient must be positive on at least 11 of the 18 tender points (R. at 1248).  That exists in this case (R. at 1251).  As Dr. Winkler noted, fibromyalgia is a perception of pain problem (R. at 1249).

Therefore, the determination of the severity of fibromyalgia rests on a patient's subjective reports and other symptoms.  Nonetheless, a patient's subjective reports must be considered by a medical source in light of their symptoms and

his own evaluation of the patient, the symptoms, and the medical source's knowledge of fibromyalgia. For example, Dr. Winkler opined that it is not in the nature of fibromyalgia to be as limiting as Dr. Iliff indicated in his report (R. at 1249). Therefore, if Dr. Iliff stated his opinions, based not only on plaintiff's subjective complaints, but also his evaluation of the patient, her symptoms, and his knowledge of fibromyalgia, then it is a valid medical opinion. However, if he did nothing more than to write down what plaintiff said her limitations were, then the report is not a valid medical opinion, but simply a recitation of plaintiff's testimony. The problem is that Dr. Iliff's report is not clear to what extent he simply reported plaintiff's asserted limitations, or whether his report represents his own independent evaluation of plaintiff's limitations. Therefore, on remand, plaintiff would be well advised to obtain further clarification from Dr. Iliff regarding what he meant when he said his findings were based on plaintiff's reports, as his report could reasonably be interpreted to mean that he simply wrote down what plaintiff said her limitations were without any independent evaluation.

The ALJ gave substantial weight to the opinions of Dr. Winkler and Dr. Rubini. He noted that they made similar findings, and stated that the testimony of both medical experts were consistent with the medical or other evidence (R. at 852).

By contrast, the ALJ found that Dr. Iliff's opinions were not consistent with the medical evidence (R. at 853).

Although the ALJ summarized the medical and other evidence in his decision, the problem with these assertions by the ALJ is that the ALJ failed to indicate why these opinions were either consistent or not consistent with the medical or other evidence. It is not readily apparent from the ALJ's opinion why these medical opinions are either consistent or not consistent with the medical or other evidence.

The court finds that such a summary conclusion that the assessments were or were not consistent with the overall record is beyond meaningful judicial review. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence supports the ALJ's conclusion that an assessment was or was not consistent with the overall record. See Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). Boilerplate, conclusory statements must be linked to evidence in the record. See Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). Conclusory statements do not provide justification for rejecting a medical source opinion; the Commissioner must give specific, legitimate reasons for rejecting the medical source opinion. Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988). Other than making conclusory statements, the ALJ provided no explanation for why two medical

assessments were found to be consistent with the evidence, while
the other medical assessment was not consistent with the
evidence.  Nothing in the ALJ's decision explains the basis for
these conclusory statements by the ALJ, except for the ALJ's
statement that the medical source opinions by Dr. Winkler and
Dr. Rubini were similar (R. at 852).  However, as set forth
previously, there were some differences in the two opinions, and
the ALJ failed to explain why some of the limitations in Dr.
Rubini's opinion were not included in the ALJ's RFC findings.
Therefore, this case shall be remanded in order for the ALJ to
explain why the evidence is consistent with certain medical
opinions, but not others.

**VI.  Did the ALJ err in her evaluation of plaintiff's credibility?**

Plaintiff also asserts error by the ALJ in his credibility
findings in addition to the previously addressed issue of the 3rd
party statements.  The court will not address the remaining
issues in detail because they may be affected by the ALJ's
resolution of the case on remand after the ALJ considers the 3rd
party testimony/statements, and further evaluates the medical
opinion evidence, as set forth above.  See Robinson v. Barnhart,
366 F.3d 1078, 1085 (10th Cir. 2004).

One of the reasons the ALJ provided for discounting
plaintiff's credibility was the fact that she waited over 10

years after she alleged she became disabled to apply for disability (R. at 850). Plaintiff argues that the ALJ erred by taking this into consideration because plaintiff can only claim benefits for 12 months prior to the application date. On remand, the ALJ should take this argument into consideration in deciding what weight to accord to this information. However, the court previously held that it could be a factor for the ALJ to consider (R. at 876).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of August 2013, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge